UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | 1-16-cv-01996-DML-SEB |
| | ) | |
| CITY OF FRANKFORT, CHRIS L. McBARNES, | ) | |
| individually and in his official capacity as a | ) | |
| member of the Frankfort Safety Board, | ) | |
| KENNY ESTES, individually and in his official | ) | |
| capacity as a member of the Frankfort Safety | ) | |
| Board, JIM SIGFRIED, individually and in his | ) | |
| official capacity as a member of the Frankfort | ) | |
| Safety Board, and TROY BACON, individually | ) | |
| and in his official capacity as Chief of Police of | ) | |
| the City of Frankfort, | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Cross-Motions for Summary Judgment

### Introduction

Plaintiff Kevin O'Brien was a police sergeant on the City of Frankfort Police

Department, and had been an officer for about twenty years. As will be described

later in more detail, Sergeant O'Brien faced potential disciplinary action after an

investigation of certain of his conduct. He hired counsel, and eventually signed a

written agreement under which he agreed to retire from the police department. The

agreement contains a provision that Mr. O'Brien "waives any right he has under

Ind. Code § 36-8-3-4 to a hearing on said disciplinary charges." This statute is

known as Indiana's Tenure Act. In this lawsuit, Mr. O'Brien contends that the City,

its Chief of Police, and members of its Safety Board[1] are liable because they did not properly provide him with a hearing or information about his rights to a hearing, and because he allegedly was coerced into retirement by the threat of termination. He contends that the defendants' actions deprived him of his federal due process rights and his due process rights under Indiana's Tenure Act, Ind. Code § 36-8-3-4. He also contends that the Tenure Act is a contract, the violation of which gives rise to an independent cause of action for breach of contract.

The parties have filed cross-motions for summary judgment. The defendants seek summary judgment on all claims. Mr. O'Brien seeks summary judgment as to liability on all claims, although in his response to the defendants' summary judgment motion, he has (1) voluntarily abandoned his claims against defendants Troy Bacon (the Mayor) and Jim Sigfried (a member of the Frankfort Safety Board), in their individual and official capacities and (2) conceded that he is not pursuing any state law tort claims. The court therefore GRANTS summary judgment in favor of Messrs. Bacon and Sigfried without further analysis, and it will not address the defendants' arguments that any tort law claims are barred because a statutory tort claims notice was never sent.

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit

---

[1] Under the Tenure Act, the City's Safety Board is the government entity that holds the power to discipline a police officer. Ind. Code § 36-8-3-4(b).

under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about irrelevant facts do not matter; only factual disputes that might affect the outcome of the suit in light of the substantive law will prevent summary judgment. *Id.; JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996). A genuine dispute as to a material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby,* 477 U.S. at 249. The party that bears the burden of proof on an issue may not rest on his pleadings, but must affirmatively demonstrate by designating specific facts on each essential element of his case "that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

The court construes the evidence, and draws all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). When evaluating cross-motions for summary judgment, therefore, the court construes the evidence and its reasonable inferences in favor of the party against which the particular motion under consideration is made. *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). "[I]f genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate." *Olayan v. Holder*, 833 F.Supp.2d 1052, 1061 (S.D. Ind. 2011).

## Evidentiary Issues

The defendants have raised evidentiary objections and move to strike certain "factual" assertions made by Mr. O'Brien on the grounds that they are either (a) not supported by the designated evidence, or are (b) inadmissible hearsay, and therefore may not be considered by the court. *See* Fed. R. Civ. P. 56(c) (requiring that a party who makes an assertion about the existence of a particular fact "must support the assertion" by citing to particular parts of the record on summary judgment, including deposition testimony or affidavits); *MMG Financial v. Midwest Amusements Park, LLC,* 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.")

The court resolves the objections before analyzing the parties' substantive arguments because their resolution affects the scope of information the court can consider in deciding the parties' cross-motions. Indeed, as will be seen, a factual foundation central to Mr. O'Brien's case—the existence of alleged threats that coerced him to agree to retire—is not supported by any admissible evidence.

The court first addresses the defendants' objection that certain fact assertions are not supported by the plaintiff's designated evidence; it will then address the alleged hearsay statements.

### A.    Statements Without Evidentiary Support

The defendants object to two statements. The first is that "O'Brien was told he was an 'at-will' employee." (Plaintiff's Brief at p. 1, Dkt. 43). There is no citation

to any evidence to support this assertion; it therefore will not be considered by the court.

The second assertion is that after the police department's internal investigation, Mr. O'Brien "was informed he was being given a three-day suspension without pay, and was being reduced from his former rank of Sergeant to that of Patrolman." (Plaintiff's Brief, Dkt. 43, at p. 3). Although Mr. O'Brien cites affidavit testimony as his support for this assertion, the affidavit (and Mr. O'Brien's deposition testimony) do not actually provide that support. Mr. O'Brien's affidavit and deposition testimony make clear that no discipline was being imposed at that juncture—no suspension and no reduction in rank. Rather, the Chief of Police had expressed only that he was *recommending* a suspension and rank reduction. His affidavit states: "I was informed the Chief of Police was recommending that I be given a three-day suspension without pay, and reduced from Sergeant to Patrolman." (O'Brien Aff. ¶ 2, Dkt. 44-5). Mr. O'Brien's deposition testimony confirms that a recommendation would be made, but that no disciplinary action had been taken. He testified:

> Q.   Did the chief tell you that you were being demoted or did he tell you that he was recommending that you be demoted?
> A.   That was going to be his recommendation.

(O'Brien Dep. Trans. at p. 102, Dkt. 40-1.) Because the assertion that Mr. O'Brien was told he was being suspended and his rank reduced is not supported by the record, it will not be considered by the court.

## B.    Inadmissible Hearsay

The defendants contend that four factual assertions are inadmissible hearsay. The court agrees and will not consider the following assertions on hearsay grounds.

1. "[F]ollowing the Frankfort Police Department's internal investigation, O'Brien was informed he was being given a three-day suspension without pay, and was being reduced from his former rank of Sergeant to that of Patrolman." (Plaintiff's Brief, Dkt. 43, pp. 2-3).

In addition to the fact that there is no evidentiary support for the assertion that Mr. O'Brien was told by anyone that he was *being given* certain disciplinary sanctions (as opposed to an intended recommendation of certain discipline, as addressed above), this statement is not attributed to any particular individual. Statements of unknown individuals are hearsay and cannot be brought under a hearsay exception for admissions of party opponents. *Indianapolis Minority Contractors Assoc., Inc. v. Wiley*, 1998 WL 1988826 at *17 (S.D. Ind. 1998), *aff'd*, 187 F.3d 743 (7th Cir. 1999).

2. The third, fourth, and fifth assertions are variations of each other:

   (a) "I was told that if I didn't sign the agreement I would be terminated." (O'Brien Aff., ¶ 9, Dkt. 44-5).

   (b) "[T]he day O'Brien was told about the proposed agreement, he was told that if he didn't sign the agreement he would be terminated." (Plaintiff's Brief at p.4, Dkt. 52, citing O'Brien Dep. Trans. at p. 64 and O'Brien Aff., ¶¶ 9-10).

   (c) "[D]efendants do not contest O'Brien's testimony that he was told he had to sign the agreement or be terminated." (Plaintiff's Brief, Dkt. 43, p. 9).

These assertions have no attribution—the declarant is unknown—and they therefore are inadmissible hearsay. *Wiley,* 1998 WL 1988826 at *17. In addition, as the defendants have shown, the only evidence that exists that statements even remotely like these were made at all is Mr. O'Brien's deposition testimony that his lawyer (Jeffrey Little) told him, after Little had met with the City's attorney about the agreement, that he would be terminated. (O'Brien Dep. Trans. at pp. 88-89, Dkt. 40-1). Even if an inference could be drawn that the City's attorney had threatened termination unless the agreement was signed (an assertion the City's attorney denies in his testimony), there is still a hearsay problem. There is no testimony of O'Brien's lawyer that he relayed to Mr. O'Brien that Mr. O'Brien must sign the agreement or be terminated, and no contention that a hearsay exception possibly exists for the lawyer's alleged statement. Thus, there is no evidentiary support on summary judgment for any assertion that Mr. O'Brien was coerced into signing the agreement because of some alleged threat of the termination of his job made by any of the defendants or their agents.

The court now turns to the material, undisputed facts.

## **Material Facts**

The facts recited in this section are undisputed by the parties or presented in the light most favorable to Mr. O'Brien.

Mr. O'Brien was employed by the Frankfort Police Department ("FPD") as a day-shift patrol sergeant. On October 1, 2015, while off-duty, he was involved in an incident that led to a criminal investigation conducted by the Indiana State Police and an internal investigation conducted by the FPD. (Bacon Dep., Dkt. 44-3, at p.

42). The purpose of the internal investigation was to determine if Mr. O'Brien's actions violated any FPD policies. (*Id*., at pp. 6-7). Pending the conclusion of both investigations, Mr. O'Brien was placed on paid leave. (O'Brien Dep. Dkt. 40-1, p. 42). On November 16, 2015, the Indiana State Police released its report and concluded that no criminal charges were warranted. Mr. O'Brien was never charged with any criminal offense. (O'Brien Aff., ¶ 1, Dkt. 44-5).

After the internal investigation, FPD Chief Troy Bacon decided that Mr. O'Brien's conduct on October 1, 2015, had violated FPD policies. (Bacon Dep., Dkt. 44-3, at pp. 7-8). Mr. O'Brien does not dispute that some of the conduct he engaged in on October 1, 2015, constituted misconduct. (O'Brien Dep. Dkt. 40-1, pp. 15 and 102). Chief Bacon then drafted a Notice of Charges and presented the Notice to the Safety Board at an Executive Session on December 9, 2015. (Bacon Dep. at pp. 8-10).

When the Executive Session had ended, Mr. O'Brien and his attorney, Jeffrey Little, were invited into the meeting and given copies of the Notice of Charges against Mr. O'Brien. (O'Brien Dep., Dkt. 40-1, at p. 45). The Chief had recommended to the Safety Board that Mr. O'Brien be given a three-day suspension without pay and a demotion in rank. (Bacon Dep., Dkt. 44-3, at p. 18). No one discussed during this meeting with Mr. O'Brien or Mr. Little any procedural rights provided by Indiana's Tenure Act. (O'Brien Dep., Dkt. 40-1, pp. 101-102; Bergum Dep., Dkt. 44-4, at pp. 6-7). In the view of the City's attorney, a notice of rights

under the Tenure Act would come later in the disciplinary process. (Bergum Dep., Dkt. 44-4, at p. 7).

At the meeting, Mr. O'Brien was asked if he understood the charges against him; he stated that he did. (O'Brien Dep., Dkt. 40-1, p. 20). Mr. O'Brien admits that he knew the Chief's disciplinary recommendations (three-day suspension and reduction in rank) were not final; they were recommendations only. (O'Brien Dep., Dkt. 40-1, p. 15, 102).

The next day, Mr. Little (O'Brien's lawyer), acting on Mr. O'Brien's behalf, met with Mr. Bergum, the City's lawyer. (Bergum Dep., Dkt. 44-4, p. 7). The City's lawyer gave Mr. Little an initial draft of an agreement ("Agreement") which provided, in pertinent part, that disciplinary proceedings before the Safety Board would be terminated and Mr. O'Brien would remain employed until March 15, 2016, his twenty-year anniversary with FPD and the date of full vesting of his pension benefits, and thereupon retire. (O'Brien Dep., Dkt. 40-1, p. 21 & 26). Mr. Little made some minor changes to the Agreement. (Bergum Dep., Dkt. 44-4, p.7-8). The final Agreement required Mr. O'Brien to undergo a three-day suspension and demotion, and then to use his paid sick and personal leave and vacation time until the date of retirement from FPD. (O'Brien Dep., Dkt. 40-1, pp. 21 and 26).

The Agreement, which Mr. O'Brien signed, states in part:

2. Upon execution of this agreement, Employee shall be immediately suspended without pay for a period of three (3) days and shall be demoted in rank from Patrol Sergeant to First Class Patrol Officer; that Employee hereby consents to and agrees to such discipline. Employee waives any right he has under I.C. 36-8-3-4 to a hearing on said disciplinary charges.

3. Employee voluntarily and irrevocably serves notice herein to Employer that Employee shall retire from the Frankfort Police Force effective March 15, 2016, at 4:00 P.M., or the date on which Employee's 20 year retirement vests, whichever date is earlier; that Employer hereby accepts such irrevocable notice of retirement. Employee further tenders to Employer upon execution of this agreement the Employee's notice of retirement in letter form. Employee shall retire on said effective date of retirement unless Employee's employment with the City of Frankfort is sooner terminated as provided in this agreement.

(Agreement at p. 2, Dkt. 40-2).

Mr. O'Brien also signed a resignation letter at the same time. The letter states in pertinent part:

I am tendering this letter with the intention of indicating that I, Kevin O'Brien, am retiring from the Frankfort City Police Department. I understand that this letter of retirement is irrevocable once it is accepted by the City of Frankfort, through the Board of Public Works and Safety.

(Retirement Letter, Dkt. 40-3).

Mr. O'Brien had the opportunity to read the Agreement and discuss it with his lawyer before signing it. (O'Brien Dep. at p. 26). Mr. O'Brien signed the Agreement and associated retirement letter on December 15, 2015, at his lawyer's office. (O'Brien Dep. at pp. 64-65). The Agreement and retirement letter were presented to and approved by the Safety Board at its regularly scheduled meeting on the afternoon of December 15, 2015.

## Analysis

The court will now analyze Mr. O'Brien's federal constitutional and state law claims based on these undisputed facts. The court will address the federal claims first.

## I. Defendants are entitled to summary judgment on the federal law claims.

Mr. O'Brien asserts that the defendants violated his constitutional rights to due process under the Fifth and Fourteenth Amendments because he was not provided with appropriate due process, including notice of important rights under Indiana's Tenure Act, and was coerced into retiring under the Agreement, thereby constituting a constructive discharge. The Fifth Amendment claim is not tenable as a matter of law because the Due Process Clause of the Fifth Amendment applies to actions of the United States, while the Due Process Clause of the Fourteenth Amendment applies to the States. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). The Fifth Amendment thus has no application in this case.  Mr. O'Brien's federal constitutional due process rights arise only under the Fourteenth Amendment, and his claim is analyzed under Section 1983.

### A. Procedural Due Process

A successful 42 U.S.C. § 1983 action "must possess two elements: the conduct complained of must have been under color of state law, and it must have deprived a person of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States." *Larsen v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997).

A procedural due process claim, like that raised by Mr. O'Brien in this case, requires a two-step analysis. The first step requires a determination of whether the plaintiff has been deprived of a protected property or liberty interest; the second step requires a determination of what process is due. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996); *Wallace v. Tilley*, 41 F.3d 296, 299 (7th Cir. 1994).

Regarding the first step, the plaintiff bears the burden of proving that an interest entitled to Fourteenth Amendment procedural protection exists. *See Larsen,* 130 F.3d at 1282.

## B.     Protected Property Interest

Mr. O'Brien contends, and the defendants do not disagree, that Indiana's Tenure Act creates such a property right. A review of the case law supports this view.  In *Kennedy v. McCarty*, 778 F. Supp. 1465, 1470 (S.D. Ind. 1991), the court ruled that because the Tenure Act protects Indiana police officers from termination except for cause, police officers therefore enjoy a protected property interest in their continued employment. *See also City of Clinton v. Goldner*, 885 N.E.2d 67, 72 (Ind. Ct. App. 2008) (the Tenure Act, Ind. Code § 36-8-3-4, provides that a full-time paid police officer holds office or grade until he or she is dismissed or demoted by the safety board for cause). The court thus addresses whether there is any evidence on which a jury could find that Mr. O'Brien was deprived of his right to employment without due process of law.

## C.     Deprivation without Due Process

Mr. O'Brien argues that he was entitled to a hearing and notice of his procedural rights under the Tenure Act before the Safety Board could accept his resignation. The fundamental difficulty for Mr. O'Brien is the fact that the defendants never took any actions against him that would trigger his right to a hearing and notice of rights preliminary to a hearing. Under the Tenure Act, notice is required upon "suspension, demotion, or dismissal." Ind. Code § 36-8-3-4(c).

Nothing in the summary judgment record indicates that the Safety Board took any of these actions. Rather, the record is undisputed that although a recommendation of disciplinary action had been made, no such action had been taken by the time of Mr. O'Brien's giving of his irrevocable notice of retirement.

Mr. O'Brien attempts to overcome this obstacle by arguing that facing possible disciplinary action by the Safety Board without being notified of his rights was so coercive that he was constructively discharged without having been provided appropriate due process. This argument fails for several reasons.

First, Mr. O'Brien gave an irrevocable notice of retirement and was therefore not entitled to a hearing and the rights attendant to a hearing. The Seventh Circuit has repeatedly held that "[i]f an employee does resign voluntarily, there is no deprivation and so no right to a hearing." *Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir.1988); *Graehling v. Village of Lombard*, 58 F.3d 295, 298 (7th Cir. 1995) ("[O]ne who elects between lawful alternatives cannot later cry 'coercion.'"); *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) ("A public employee who voluntarily resigns cannot complain about lack of due process. . . .")

In *Graehling v. Village of Lombard*, the plaintiff police officer was referred for a psychiatric assessment after several disciplinary incidents. 58 F.3d at 296. The psychiatrist concluded that the officer suffered from bipolar manic depression, alcoholism, and post-traumatic stress syndrome, *id.,* and based on that information, the deputy chief of police concluded that the officer was no longer fit for duty. *Id*. The deputy chief summoned the plaintiff to his office and gave him two choices:

"resign immediately, but with an effective date far enough ahead for his pension to vest, or be sent home on leave." *Id.* The plaintiff had no available paid sick or vacation days, and the second option would leave him without income. The officer picked the first option although his last date of employment was pushed out about nine months so that the officer would reach 20 years of service. The local safety board accepted the officer's resignation in January, and the deputy chief assigned the plaintiff to back office duties until his last day of employment about nine months later.

About a week before his scheduled departure, the plaintiff asked the Village to let him remain on the police force. The Village refused "on the basis that his resignation was effective and, thus, irrevocable as of the date of its acceptance" at the safety board's January meeting. The plaintiff then filed a complaint in federal district court seeking relief under Section 1983 for alleged violations of due process. *Id.* at 297. The plaintiff argued that he had a protected property interest in his job "so the Village could not have sacked him without notice and an opportunity for a hearing." *Id.*

The district court dismissed his case under Rule 12(b)(6), and the Seventh Circuit affirmed. In its analysis, the court stated: "[A]n employee may decide whether to avail himself of that opportunity [to have a hearing]; one who resigns has decided not to use it and cannot complain." *Id.* at 297. It added: "The fatal flaw in [the officer's] complaint is that one who elects between lawful alternatives cannot later cry 'coercion.'" *Id.* at 298.

In the *Palka* case, 623 F.3d 447, the plaintiff officer was the subject of an internal investigation. Disciplinary charges were filed, and a recommendation was made that his employment be terminated and a referral for possible prosecution also be made. *Id.* at 451. A hearing was scheduled before the County's Merit Systems Protection Board on the disciplinary charges. Later, the chief of the sheriff's department told the plaintiff that if he retired, "the Merit Board action would 'go away' and he would receive full retirement benefits." *Id.* The plaintiff agreed to resign and receive full retirement benefits in exchange for terminating the disciplinary proceedings. *Id.*

The plaintiff later filed a lawsuit seeking relief under Section 1983 on the ground that the sheriff's department had violated his due process rights under the Fourteenth Amendment. *Id.* at 453. The court held that the County and its officials could not be held liable when procedural due process is available but an employee chooses not to avail himself of its protections. *Id.* The court further stated that deciding between retiring and preserving benefits or facing a disciplinary hearing and risking termination is not coerced retirement, even though the officer "no doubt" was confronted with a difficult choice. *Id.*

Decisions by Indiana courts are consistent. They have ruled that a police officer who voluntarily resigns waives his due process rights under the Tenure Act. *State ex rel. Palm v. City of Brazil*, 73 N.E.2d 485, 488 (Ind. 1947) (the Tenure Act "was not passed for the benefit of those who quit and resign their jobs"); *Town of Highland v. Powell*, 341 N.E.2d 804, 807 (Ind. Ct. App. 1976) (a member of a police

force who voluntarily terminates his contract of employment waives his due process rights under the Tenure Act). Indiana courts also have ruled that a public employee's difficult choice to resign rather than face disciplinary proceedings does not constitute a decision made under duress that could invalidate a resignation. *Crabtree v. Lee*, 469 N.E.2d 476, 478 (Ind. Ct. App. 1984); *Board of School Comm'rs v. Bever*, 5 N.E.2d 307, 309 (Ind. 1936) (school teacher who chose to resign when faced with a choice of resignation or termination was not coerced to resign).

As demonstrated above, both federal law addressing constitutional due process rights and Indiana state law addressing the Tenure Act specifically hold that an officer's choosing to resign rather than to face disciplinary proceedings is not a coerced resignation or constructive discharge. In attempting to overcome the great weight of these cases, Mr. O'Brien cites *Watkins v. Milwaukee Cty. Civil Serv. Comm'n*, 276 N.W.2d 775 (Wisc. 1979), a case that applied Wisconsin state law. The *Watkins* case addresses that plaintiff's theory that he was improperly coerced into resigning without being afforded his rights under Wisconsin law when he was threatened with criminal prosecution for theft unless he resigned. *Watkins* is of no help to Mr. O'Brien. Mr. O'Brien does not even suggest he was threatened with criminal prosecution if he didn't retire; indeed, he does not have any evidence that any defendant even threatened the termination of his employment.

There is simply no evidence on the summary judgment record on which a reasonable juror could decide that Mr. O'Brien was somehow improperly coerced into entering into the Agreement under which he retired from the FPD, making his

retirement involuntary and a constructive discharge for which he was entitled to more process than the defendants afforded him. Undisputed material facts demonstrate that Mr. O'Brien, while represented by counsel, signed the Agreement and the resignation letter by which he voluntarily resigned and *at the same time* expressly waived any rights under Indiana's Tenure Act, Ind. Code § 36-8-3-4.

There is no fact issue for a jury to decide, and the defendants are entitled to summary judgment on Mr. O'Brien's constitutional due process claims brought under Section 1983.

## II.     Defendants are entitled to summary judgement on Mr. O'Brien's state law breach of contract claim.

Before addressing the parties' summary judgment arguments on Mr. O'Brien's state law breach of contract claim, the court first considers whether it should retain jurisdiction to decide the claim.

### A.     Jurisdiction

Because the federal law claims have been decided on summary judgment in favor of the defendants, the court must decide whether it should exercise its discretion to retain supplemental jurisdiction over the state law breach of contract claim pursuant to 28 U.S.C. § 1367(a) or to dismiss it without prejudice pursuant to 28 U.S.C. § 1367(c). *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866, 173 L.Ed.2d 843 (2009) (district court's decision whether to exercise supplemental jurisdiction after dismissing federal claims over which it had original jurisdiction is "purely discretionary"); 28 U.S.C. § 1367(c) (district court "may decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all

claims over which it has original jurisdiction"). The general rule is that when all federal claims are dismissed, the district court should decline to exercise supplemental jurisdiction unless certain factors are present. *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 546 (7th Cir. 1996). The Seventh Circuit has identified three such factors: "where the statute of limitations would bar the refiling of the supplemental claims in state court"; "where substantial federal judicial resources have already been expended on the resolution of the supplemental claims"; and "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

These factors weigh in favor of the court's continued exercise of its supplemental jurisdiction over the state law breach of contract claim. That claim, brought solely against the City of Frankfort, is closely related to the constitutional due process claims that were brought under Section 1983 against the City and members of the Frankfort Safety Board, which the court already has analyzed. Further, the parties have fully briefed the contract claim and it is obvious how the claim should be decided. The court finds that any comity concerns in favor of remand are not strong enough to outweigh the judicial economy, convenience, and fairness that result from this court retaining jurisdiction. For these reasons, the court, in its discretion, will exercise supplemental jurisdiction over Mr. O'Brien's state law claim against the City of Frankfort.

## B.    Mr. O'Brien's Breach of Contract Claim

Mr. O'Brien's state law breach of contract claim asserts that the Indiana Tenure Act creates a contract between him and the City requiring the provision of certain due process protections including a disciplinary hearing and notice of rights in connection with a disciplinary hearing, which Mr. O'Brien did not receive.  Under Indiana law, the essential elements of a breach of contract claim are existence of a contract, the defendant's breach thereof, and damages. *Shumate v. Lycan,* 675 N.E.2d 749, 753 (Ind. Ct. App. 1997); *Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 995 (Ind. Ct. App. 1998).  Mr. O'Brien has cited case law that may support an argument that the Tenure Act itself can be viewed as an extant contract between him and the City governed by general contract law principles.

In *State ex rel. Palm v. City of Brazil*, 73 N.E.2d 485, 488 (Ind. 1947), the Indiana Supreme Court stated that the policemen's Tenure Act is "a part of" policemen's "contracts of employment," and a police officer cannot be dismissed except by the Board of Public Works and Safety after charges have been filed, notice has been given, and a hearing held.  In *City of Terre Haute v. Brown,* 483 N.E.2d 786 (Ind. Ct. App. 1985), the court ruled on the statute of limitations applicable to a fireman's claim that his rank had been reduced without proper notice or a hearing, finding that the fireman's claim was subject to a twenty-year limitation period for written contracts.  *Id.* at 788.  The court observed that a firemen's employment status is created by "a combination of relevant statutes, ordinances, and safety board records" and "such laws affecting employment become a part of the contract

as if their terms were expressly referred to or incorporated therein." Thus, according to the court, "a valid written contract of employment is created" when the fireman begins his employment. *Id.* at 787-88. *Gibson County v. State ex rel. Emmert,* 609 N.E.2d 1179 (Ind. Ct. App. 1993), involved a similar question about the applicable statute of limitations to an employment claim brought by a jail officer. The court ruled that even though the jail officer "never held a tangible written document of employment," her "contract" was written in the same sense that the firemen's employment contract addressed in *Terre Haute* was a written contract. *Id.* at 1182-83.

Even if the court accepts that these cases would permit a contract claim under the Tenure Act, *cf. Pittman v. Chicago Bd. of Educ.,* 64 F.3d 1098, 1104 (7th Cir. 1995) (holding that similar Illinois statute creates property rights that can be altered by the legislature but not contract rights), Mr. O'Brien cannot overcome waiver principles.

The undisputed evidence is that Mr. O'Brien, with the advice of counsel, entered into the Agreement with the City by which he voluntarily retired. As discussed above, Indiana law holds that a police officer who voluntarily resigns waives his due process rights under the Tenure Act. *See State ex rel. Palm v. City of Brazil*, 73 N.E.2d 485, 488 (1947); *Town of Highland v. Powell*, 341 N.E.2d 804, 807 (Ind. Ct. App. 1976). Further, as part of the Agreement itself, Mr. O'Brien clearly and unequivocally waived his rights under the Tenure Act. His Agreement with the

City says so:  "Employee waives any right he has under I.C. 36-8-3-4 to a hearing on said disciplinary charges."

Waiver is a defense to a breach of contract claim.  *E.g., Van Bibber Homes Sales v. Marlow,* 778 N.E.2d 852, 859 (Ind. Ct. App. 2002) ("Performance of a contractual condition may be excused by waiver," which is "the voluntary and intentional relinquishment of a known right.")  No reasonable jury could find based on the summary judgment record that Mr. O'Brien had not waived his rights under the Tenure Act. Having the advice of counsel, he signed an Agreement that expressly waived the very right he asserts on his breach of contract claim.  The City of Frankfort is therefore entitled to summary judgment on Mr. O'Brien's state law breach of contract claim.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Dkt. 40) is GRANTED.  The plaintiff's motion for summary judgment (Dkt. 42) is DENIED.  The defendants are entitled to judgment on all claims brought by plaintiff Kevin O'Brien.  The court will issue a separate Judgment.

So ORDERED.

Dated:  September 26, 2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system